UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JAMES A. SAMUEL,

        Defendant.
_____/

Criminal Action No. 11-cr-20712

Civil Action No. 14-cv-11824

HON. MARK A. GOLDSMITH

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 (Dkt. 29) AND DENYING CERTIFICATE OF APPEALABILITY**

## I. INTRODUCTION

Before the Court is Defendant James A. Samuel's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (Dkt. 29). Defendant raises two grounds for relief. First, Defendant claims that the Court and his counsel incorrectly classified his prior Indiana conviction for Class B felony burglary as a predicate offense for the career offender guidelines. Def. Mem. 4, 8-9 (Dkt. 31). Second, Defendant argues that the Court and his counsel erred in applying a two-level enhancement for possession of a firearm during the subject drug offense, because the original felon-in-possession charge was dismissed as part of the agreement. Id.

The Court concludes that Defendant's Indiana conviction qualifies as a "crime of violence" as defined by the sentencing guidelines, and thus the career offender guidelines were correctly applied. The Court also finds that the purportedly erroneous two-level enhancement did not impact Defendant's sentence. Therefore, the Court denies Defendant's motion.

## II. BACKGROUND

1

A federal grand jury returned an indictment against Defendant on November 16, 2011, charging him with one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 1). The United States Attorney subsequently charged Defendant via a superseding information with a count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Superseding Information (Dkt. 18). Defendant waived his right to an indictment by way of a grand jury on this charge. See Waiver (Dkt. 23).

Defendant subsequently entered into a Rule 11 plea agreement with the Government. See Plea Agreement (Dkt. 22). Pursuant to that agreement, the Government agreed to dismiss the indictment for felon in possession of a firearm, and Defendant would plead guilty to the charge of possession with intent to distribute cocaine. Id. at 1, 5.

The parties also agreed that the sentencing guideline range for this drug charge was 151-188 months. Id. at 3. This guideline determination was based on Defendant qualifying as a career offender under United States Sentencing Guidelines ("U.S.S.G.") section 4B1.1. The plea agreement provides that "[t]here are no sentencing guideline disputes." Id.

The plea agreement also contains a waiver clause. Pursuant to that provision, Defendant "knowingly and voluntarily waive[d] that right [to attack his conviction and sentence via post-conviction motions, petitions, or independent civil actions,] and agree[d] not to contest his/her conviction or sentence in any post-conviction proceeding, including — but not limited to — any proceeding under 28 U.S.C. § 2255." Id. at 7. Defendant could not withdraw from the agreement — including the waiver provision — so long as the Court sentenced Defendant to less than the maximum authorized by the agreement. Id. at 6.

Defendant confirmed his understanding of these terms — including the guideline range of 151 to 188 months — on the record before entering a guilty plea before Magistrate Judge

Michael Hluchaniuk. Plea Tr. at 17-22 (Dkt. 36).[1] The Magistrate Judge found that Defendant's plea was knowing and intelligent, and he recommended that the Court accept the plea. See Report & Recommendation (Dkt. 20). The Court did so (Dkt. 24), and ultimately adopted the plea agreement, sentencing Defendant to 151 months' imprisonment (the bottom of the guideline range) on the drug charge, and dismissing the indictment containing the felon-in-possession-of-a-firearm charge. See Judgment at 1-2 (Dkt. 26).

Defendant subsequently filed the instant motion and supporting memorandum. Per the Court's Order (Dkt. 34), the Government filed a response (Dkt. 38).

### III. 28 U.S.C. § 2255 STANDARD

This motion is brought pursuant to 28 U.S.C. § 2255, which provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).[2]

To prevail on a section 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005). Non-constitutional errors are generally outside the scope of section 2255 relief. See

---

[1] Given that Defendant specifically acknowledged this guideline range on the record, the Court rejects Defendant's argument that he was "under the belief that he would receive a federal sentence of 21 to 27 months" as incredible. Def. Mem. at 15.

[2] To the extent Defendant also relies on 18 U.S.C. § 3742 and/or Federal Rule of Criminal Procedure 52, these provisions do not give this Court authority to grant the relief Defendant seeks. See United States v. Piner, No. 90- 50024, 2013 WL 6009907, at *2 (E.D. Mich. Nov. 13, 2013).

United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999) (internal quotation marks and citation omitted).

A court should grant a hearing to determine the issues and make findings of fact and conclusions of law on a section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing § 2255 Cases, Rule 4(b).

### IV. ANALYSIS

Defendant claims that his counsel was ineffective during the plea negotiations, thereby violating his Sixth Amendment rights and resulting in the Court applying a purportedly erroneous guideline range. Defendant raises two primary arguments for how his counsel was ineffective: (i) Defendant should not have been deemed a career offender because his 1992 Indiana conviction is not a valid predicate offense, and (ii) the two-level enhancement for possession of a firearm during the drug offense should not have applied.[3] Def. Mem. at 14-17.

---

[3] Defendant cursorily raises two other arguments that the Court rejects as unsupported and meritless. See United States v. Fizer, No. 07-20953, 2010 WL 299502, at *1 (E.D. Mich. Jan. 20, 2010) (rejecting arguments as unsupported). First, Defendant alleges that his counsel failed to file an "Anders brief" on his behalf. Def. Mot. 5 (Dkt 29). However, Defendant does not

In order to succeed on his claims of ineffective assistance of counsel, Defendant "must show (1) that counsel's representation fell below an objective standard of reasonableness, . . . and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Campbell v. United States, 686 F.3d 353, 357 (6th Cir. 2012) (quotation marks omitted) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

In general, judicial scrutiny of a counsel's representation is "highly deferential." Strickland, 466 U.S. at 689. In considering whether representation fell below the standard of a competent attorney, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Furthermore, to establish prejudice in the context of a guilty plea, "'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003) (quoting Hill v. Lockhart, 474 U.S. 52, 58-59 (1985)). "[A] court need not determine whether counsel's performance was

---

allege that he ever requested that his counsel file an appeal. Nor does Defendant set forth the purported grounds for appeal he would have presented to the Sixth Circuit.

 Second, Defendant claims that his counsel failed to obtain a mental health evaluation, and that this "could have changed the outcome of his sentencing." Id. However, Defendant does not explain how this would have changed the outcome of his sentencing, nor does he claim that a psychologist would have found him incompetent. To the contrary, during the plea hearing, the Magistrate Judge questioned Defendant and established that he was competent to enter a plea. Hr'g Tr. at 8-10 (Dkt. 36) ("The Court: So do you believe you're thinking clearly today and capable of making an important decision? The Defendant: Yes, sir, I am."). Further, neither Defendant's counsel nor the Magistrate Judge raised any concerns about Defendant's ability to understand the proceedings; to the contrary, the Magistrate Judge expressly found that Defendant was "competent and capable of entering an informed guilty plea," id. at 24, and Defendant's counsel agreed, id. at 10. Finally, and perhaps most notably, Defendant does not claim that he was not competent to enter his plea; he simply argues that his counsel failed to obtain a mental health evaluation. The Court thus rejects this argument as meritless.

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

The Court considers each of Defendant's arguments of ineffectiveness in turn.[4]

**A.    Career Offender Guidelines**

Defendant first argues that his counsel was ineffective (i) in advising him that the career offender guidelines applied to him, and, relatedly, (ii) in failing to fully investigate his background, which, if properly investigated, would have revealed that his Indiana conviction is not a predicate offense. Def. Mem. at 14-15.

**i. Standards for the Career Offender Guidelines**

Section 4B1.1 of the United States Sentencing Guidelines sets forth the requirements for determining whether a defendant qualifies as a career offender. Under that provision, a defendant is deemed a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

---

[4] To the extent Defendant simply argues the guidelines were misapplied, without asserting a claim for ineffective assistance of counsel or involuntariness of the plea, the Court finds that Defendant waived this argument through his plea agreement. That agreement contains an express waiver clause — including waiving the right to bring section 2255 motions or challenge the sentence if within the agreed-upon range — and this provision was recited to Defendant aloud at the plea hearing. See Plea Agreement at 6-7; Plea Tr. at 19-20. Defendant stated that he understood. Plea Tr. at 20. Defendant also agreed on the record that the applicable guideline range was 151 to 188 months. Id. at 20-21. Accordingly, if Defendant is not challenging the validity of his plea, but simply the Court's application of the guidelines, this is waived. See Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999); see also Davila v. United States, 258 F.3d 448, 450-451 (6th Cir. 2001); In re Acosta, 480 F.3d 421, 422 (6th Cir. 2007). Nevertheless, for the reasons to be discussed, the Court finds Defendant's arguments meritless in any event.

Defendant does not dispute that the first two prongs of section 4B1.1(a) have been met. Rather, he argues that he did not have the necessary "prior felony convictions" for the career offender guidelines to apply. Def. Mem. at 6. Specifically, Defendant argues that his counsel — and ultimately the Court — erroneously qualified his "Indiana burglary conviction of an unoccupied dwelling . . . as one of the necessary Three [sic] qualifying violent, aggravated, or serious offenses to trigger the § 4B1.2 enhancement provision." Id.[5]

Only those felony convictions that qualify as either "a crime of violence or a controlled substance offense" serve as predicates for the career offender provisions. U.S.S.G. § 4B1.1(a). As relevant to this case, a "crime of violence" is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that — (1) has an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is <u>burglary of a dwelling</u>, arson, or extortion, involves use of explosives, or <u>otherwise involves conduct that presents a serious potential risk of physical injury to another</u>." U.S.S.G. § 4B1.2(a) (emphasis added).

**ii. Defendant's Prior Indiana Conviction**

To validly apply the career offender guidelines, the sentencing court need only find two qualifying predicate felonies. U.S.S.G. § 4B1.2(c). Defendant does not dispute the accuracy of the convictions outlined in the worksheets attached to the plea agreement. See Plea Agreement, Worksheet C. Of Defendant's many offenses, two were utilized in the career offender analysis:

---

[5] Defendant mistakenly claims that three qualifying convictions are necessary to be considered a career offender. Def. Mem. at 6. Although three qualifying convictions are required under the Armed Career Criminal Act, 18 U.S.C. § 924(e), the career offender guidelines only require two qualifying convictions.

7

An Indiana conviction for burglary (Class B) in 1992,[6] and a Michigan conviction for attempted arson of a dwelling in 2004.

Defendant does not dispute that his 2004 Michigan conviction for attempted arson qualified as a predicate offense. Instead, Defendant provides two arguments for why his 1992 Indiana conviction for Class B felony burglary should not have counted as a "crime of violence." Def. Mem. 9-13. First, Defendant argues that his Indiana conviction does not qualify as a crime of violence under the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013). Id. Second, Defendant asserts that his conviction was not a crime of violence because the dwelling was unoccupied at the time of the offense. Id. at 6. The Court rejects both claims.

With respect to his first argument, Defendant — relying on Descamps — claims that the Court erred in applying the "modified categorical" approach to determine whether his Indiana conviction qualified as a crime of violence. Id. at 10-11. However, Defendant misreads Descamps, and thus his argument fails.

In Descamps, the Supreme Court explained the procedure for determining whether an underlying conviction qualifies as a "violent felony" within the meaning of the Armed Criminal Career Act ("ACCA"). The Supreme Court held that, in general,

> [t]o determine whether a past conviction is for one of [the] crimes [set forth in the ACCA], courts use what has become known as the "categorical approach": They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the "generic" crime — i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense.

Descamps, 133 S. Ct. at 2281.

---

[6] Defendant does not dispute that his Indiana conviction was properly counted under section 4A1.2(e) — made applicable to the career offender guidelines by Application Note 3 to section 4B1.2 — given that his probation was revoked in 1997, and he served time in prison thereafter.

8

Nevertheless, the Supreme Court noted that, in some instances, the prior conviction is for "violating a so-called 'divisible statute.' That kind of statute sets out one or more elements of the offense in the alternative." Id. The Supreme Court then set forth the procedure for determining whether a conviction under a "divisible statute" qualifies as a predicate under the ACCA:

> If one alternative [under the statute] matches an element in the generic offense, but the other . . . does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction. The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

Id.

The approaches outlined in Descamps also are used to determine whether a crime is a "crime of violence" for purposes of the career offender guidelines. See United States v. Smith, 582 F. App'x 590, 594 (6th Cir. 2014); United States v. Cooper, 739 F.3d 873, 878 (6th Cir. 2014).

At issue in Descamps was whether the "modified categorical approach" of reviewing certain documents could be applied to an indivisible California statute that was broader than the generic crime. The statute in question provided "that a 'person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary,'" and thus criminalized conduct beyond that covered by the generic offense of burglary, which requires an unlawful entry into a building. Descamps, 133 S. Ct. at 2282. The Supreme Court held that the defendant's past conviction under the indivisible California statute could not constitute a predicate offense — regardless of whether the facts revealed an unlawful entry — because the statute, on its face, did not contain the generic crime's "required unlawful-entry element."

9

However, the Supreme Court endorsed using the modified categorical approach for divisible statutes, in which the elements are clearly demarcated and at least one alternative meets (or is narrower than) the generic crime's elements. Id. at 2284-2285, 2290.

Unlike the statute at issue in Descamps, which was indivisible, the Indiana statute at issue here encompasses alternative elements that could have formed the basis for Defendant's conviction. Indiana's statutory offense of burglary at the time of Defendant's conviction read as follows: "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a Class A felony if it results in either bodily injury or serious bodily injury to any person other than a defendant." Ind. Code. Ann. § 35-43-2-1 (West 1992).

Therefore, Defendant's conviction for burglary, as a Class B felony, could have been for: (i) breaking and entering the dwelling of another person, with intent to commit a felony in it, or (ii) breaking and entering the building or structure of another person, with intent to commit a felony in it, while armed with a deadly weapon. Given that one of these alternatives (burglary of a dwelling) matches an element of the generic offense, as described below, whereas the other alternative (armed with a deadly weapon) does not, outside documents may be considered in determining which alternative served as the basis for Defendant's conviction.[7]

Furthermore, unlike the California statute at issue in Descamps, which did not contain the "unlawful-entry element" required by the generic crime, the Indiana statute under which Defendant was convicted traces the elements of the generic offense of burglary of a dwelling. Defendant suggests the Indiana statute is broader than the generic crime, without identifying

---

[7] Indeed, the documents provided in this case confirmed that Defendant was convicted of burglary of a dwelling, as opposed to breaking and entering while armed with a deadly weapon. See State Court Information (Dkt. 38-3), State Court Plea Agreement (Dkt. 38-4).

10

which of Indiana's statutory elements — if any — he is challenging as overbroad. Def. Mem. at 10. Nevertheless, the Indiana burglary statute's elements for a Class C felony (which carry into Class B felony burglary as well) fit within the generic crime of "burglary," without encompassing additional conduct outside of those elements. See Taylor v. United States, 495 U.S. 575, 598 (1990) ("[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."); United States v. Jennings, 210 F.3d 376 (Table), 2000 WL 52884, at *1 (7th Cir. 2000) (holding that Indiana's burglary statute is sufficiently linked to the Supreme Court's description of burglary in Taylor to be considered a "violent felony" under the ACCA); United States v. Vogt, 588 F. App'x 497, 498 (7th Cir. 2015) (same).

Furthermore, Indiana's statutory definition of "dwelling" in effect at the time of Defendant's conviction fits with the generic definition of "dwelling," without encompassing additional places or items. See U.S.S.G. § 4B1.2(a) (defining "crime of violence" as including "burglary of a dwelling"). Compare Ind. Code Ann. § 35-41-1-10 (West 1992) ("'Dwelling' means a building, structure, or other enclosed space, permanent or temporary, movable or fixable, that is a person's home or place of lodging.") and Hayden v. State, 19 N.E.3d 831, 837 (Ind. Ct. App. 2014) ("In determining what constitutes a dwelling, . . . the Indiana courts have given dwelling its plain and usual meaning." (quotation marks and citation omitted)) with United States v. McFalls, 592 F.3d 707, 713 (6th Cir. 2010) (quoting Black's Law Dictionary's definition of "dwelling": "A building, a part of a building, a tent, a mobile home, or another enclosed space that is used or intended for use as a human habitation. The term . . . now typically includes only the structures connected either directly with the house or by an enclosed passageway."). Therefore, the Court concludes that Indiana's statute setting forth the elements

11

for burglary of a dwelling as a Class B felony tracks the generic crime of "burglary of a dwelling," and can thus serve as a predicate offense.

Furthermore, even if Defendant's conviction did not expressly meet one of the specific "crime[s] of violence" listed under section 4B1.2(a)(2), the Indiana statute qualifies as a predicate offense under the Sentencing Guidelines' "crime of violence" residual clause: "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). As various other courts have explained, the risks to third parties inherent in burglary of a dwelling — such as harm to occupants, bystanders, or people returning home while the burglary is in progress — presents a serious potential risk of injury to another, even if the state offense contains elements that are broader than the generic crime. See United States v. Phillips, 752 F.3d 1047, 1050-1051 (6th Cir. 2014) (holding that burglary is a violent felony within the ACCA's residual clause, even if the conviction required that no one be present at the time, because it still raises a risk of physical injury to passersby); James v. United States, 550 U.S. 192, 208 (2007) (the residual clause "cover[s] conduct that is outside the strict definition of, but nevertheless similar to, generic burglary"). Just as in Phillips and James, burglary of a dwelling under Indiana's statute raises the same risk of harm to third parties as the generic offense.

Accordingly, Defendant's counsel was not ineffective in concluding that the Indiana conviction could serve as a predicate offense.[8]

---

[8] Furthermore, to the extent Defendant relies exclusively on Descamps, the Supreme Court issued its decision in that case in June 2013, nearly two months after Defendant was sentenced. Defendant fails to explain how his counsel was deficient in failing to raise an argument that is purportedly based on a Supreme Court decision that had not yet been issued at the time of sentencing.

Alternatively, Defendant argues that his Indiana conviction was not a "crime of violence" because the dwelling was unoccupied at the time of the burglary. See Def. Mem. at 6. However, this alleged fact does not remove the conviction from a "crime of violence" classification. Neither the Indiana statute nor the generic crime requires the dwelling to be occupied to sustain a conviction. Furthermore, once the Court finds that Defendant was convicted of burglary of a dwelling, it "look[s] only to the fact of conviction and the statutory definition — not the facts underlying the offense — to determine whether that definition supports a conclusion that the conviction was for a crime of violence." United States v. Howard, 327 F. App'x , 573, 575-576 (6th Cir. 2009) (quotation marks and citation omitted). Therefore, because the unoccupied versus occupied distinction makes no difference under the statutory or generic definition of burglary of a dwelling, the Court does not consider this factor in deciding whether the conviction qualifies as a "crime of violence." Id. (rejecting the defendant's argument that the burglary was not a crime of violence because the dwelling was unoccupied at the time).

Numerous courts have reached the same conclusion. Phillips, 752 F.3d at 1050 ("'The risk [of burglary] arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.'" (quoting James, 550 U.S. at 203)); see also United States v. Gibbs, 626 F.3d 344, 353 (6th Cir. 2010) (finding that a second-degree home invasion conviction was a "crime of violence," even though defendant argued the dwelling was vacant); United States v. Linker, 510 F. App'x 900, 905 (11th Cir. 2013) ("[T]he Supreme Court has rejected the contention that robberies of unoccupied dwellings do not constitute crimes of violence.").

Therefore, Defendant's past Indiana conviction was properly included as a predicate "crime of violence" under the career offender guidelines, and his counsel was not deficient in failing to argue otherwise.

Furthermore, even if Defendant's counsel was deficient, Defendant has failed to sufficiently allege prejudice under Strickland.  As discussed, in the context of a plea agreement, Strickland's prejudice prong is satisfied if "the defendant . . . show[s] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003) (citation omitted).  Defendant has made no such allegation here.  Defendant does not claim that he would have chosen not to plead guilty and would have insisted on going trial if he knew about the purported erroneous application of the career offender guidelines.  Instead, Defendant argues that the "adversarial process" and his rights to due process and "fair trial proceedings/plea negotiations" were prejudiced by this purported error.  Def. Mem. at 15.  This is insufficient.

**B.      Two-Level Enhancement**

Defendant also argues that his plea agreement and the Court incorrectly used the dismissed section 922(g) offense as a predicate felony to establish his career offender status. Def. Mem. at 2, 15.  However, it is clear from the record that the dismissed charge for unlawful possession of a firearm by a felon was not used as a predicate for the career offender enhancement.  Plea Agreement, Worksheets A and C.  Rather, Defendant received a two-level increase in his non-career-offender offense level because the drug offense was committed while Defendant possessed a dangerous weapon.  See U.S.S.G. § 2D1.1(b)(1); see also Plea Agreement at 2; Worksheet A.

14

To the extent Defendant objects to this two-level increase, the Court finds that he has not shown sufficient prejudice to warrant relief. The two-level enhancement did increase his offense level from 12 to 14. However, as described above, Defendant was properly sentenced under the career offender guidelines, which resulted in a total offense level that was higher than would have applied had he not qualified for career offender status. Therefore, his total offense level under the career offender guidelines — twenty-nine — became his total offense level. See U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply."). This was the offense level that was then used to calculate the advisory guideline range, to which Defendant agreed. In other words, the two-level increase did not impact Defendant's sentence.

Accordingly, the Court rejects Defendant's argument.

**C.     Certificate of Appealability**

Because Defendant's claim for relief lacks merit, the Court will also deny a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further. See Slack v. McDaniel, 529 U.S. 473, 483–484 (2000). For the reasons stated above, and, in particular, the lack of prejudice alleged or likely, the Court will deny Defendant a certificate of appealability because reasonable jurists could not find this Court's assessment of his claims debatable.

**V.  CONCLUSION**

15

For the foregoing reasons, the Court denies Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 (Dkt. 29).

SO ORDERED.

Dated: February 23, 2015            s/Mark A. Goldsmith
      Detroit, Michigan               MARK A. GOLDSMITH
                                               United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 23, 2015.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager